IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LINDA DIAS,
   *Plaintiff*,

v.

STATE OF MARYLAND
JUDICIARY et al.,
   *Defendants*.

Civil Action No. ELH-17-3281

**MEMORANDUM OPINION**

In this employment discrimination case, self-represented plaintiff Linda Dias has filed suit against her employer, the State of Maryland Judiciary ("Maryland Judiciary"), as well as her supervisors, Tamara Chester, Kris Donaghy, Camille Blake, Kathleen Snowden, and Elaine Allen. ECF 1 ("Complaint"). Plaintiff seeks monetary damages for alleged violations of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

Plaintiff filed the Complaint on November 7, 2017. ECF 1. On December 1, 2017, this Court ordered plaintiff to supplement her Complaint, as it provided so few details that the Court was unable to discern whether plaintiff had a plausible claim. ECF 2. Plaintiff did not file an amended complaint, but instead filed "supplemental information," consisting of eight three-ring binders filled with documents marked as "exhibits." ECF 3.[1] Thereafter, the Court provided plaintiff with another opportunity to supplement her Complaint. *See* ECF 4 (Memorandum); ECF 5 (Order). Plaintiff subsequently filed an Amended Complaint. ECF 6.

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants have filed a Motion to Dismiss the Amended Complaint (ECF 9), supported by a memorandum of law (ECF 9-1) (collectively, the

---

[1] These exhibits were filed in paper format only. *See* ECF 3. When I refer to these documents I shall use the labels that plaintiff provides for them, as well as the filing number (ECF 3).

"Motion"). Plaintiff opposes the Motion (ECF 17, "Opposition"), and has submitted an exhibit. Defendants have not filed a reply, and the time do so has expired. *See* Local Rule 105.2.a.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Background[2]

Plaintiff alleged that she had been employed as a "Drug Court Liaison" for the District Court of Maryland for "approximately four years" when she was informed by her supervisor, Kathleen Snowden, on February 5, 2016, that she "would be required to sit in the Courtroom for Drug Court every Tuesday and Thursday for 8 hours and or the duration of Drug Court." ECF 6, ¶ 1. Plaintiff informed Snowden that she could not sit in Drug Court for a prolonged period of time because doing so would be "physically impossible," as plaintiff suffers from "debilitating migraines." *Id.*[3] Because of her "debilitating migraines," plaintiff asserts that she must "avoid bright lights which include sunlight, loud noise and avoid heat." *Id.* ¶ 6.

Thereafter, plaintiff asserts that she received a "demotion in duties," and that her "Drug Court liaison" replacement "was never instructed to sit in the Courtroom for Drug Court, other than Holidays . . . [and] has not sat in Drug Court in over 120 days." *Id.* ¶ 1. Further, plaintiff claims that on February 29, 2016, Ms. Blake "instructed" plaintiff to sit with a co-worker "under a bright fluorescent bulb" for "four hours." *Id.* ¶ 6.

---

[2] In view of the procedural posture of the case, I must accept as true the facts alleged in the Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). I am also mindful that plaintiff is *pro se*, and therefore I must construe her submissions liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[3] Plaintiff "has been on FMLA" for her migraines and has submitted several exhibits titled "Designation Notice (Family and Medical Leave Act)." ECF 3. The exhibits appear to show several periods of time when plaintiff requested FMLA leave, and her request was approved. Plaintiff asserts that "between February 22, 2016 through January 2018," she has "been out on FMLA for 81 days." ECF 6, ¶ 20.

According to plaintiff, on March 11, 2016, plaintiff's neurologist completed an "ADA Request form," which gave instructions on how to make her office "ADA accommodating." ECF 6, ¶ 5. Plaintiff's doctor added "clarification" to the instructions on March 29, 2016. ECF 6, ¶ 5. Plaintiff submitted two exhibits in support of this contention, styled "Exhibit I" and "Exhibit J," which appear to be doctor's notes requesting "that Ms. Dias have access to a fan and that she be able to have frequent water breaks, at least every 2 hours while working." ECF 3.

Plaintiff contends that on February 8, 2016, she filed a complaint with the "Office of Fair Practice" as well as the Equal Employment Opportunity Commission ("EEOC"). ECF 6, ¶ 2. Plaintiff did not attach these complaints to her suit.

On March 16, 2016, plaintiff received a letter from Warren Hedges, a Fair Practices Officer for the Maryland Judiciary. *See* ECF 3, "Exhibit E" (Letter dated March 16, 2016, from Warren Hedges to plaintiff); ECF 6, ¶ 3. The letter stated, ECF 3 (italics omitted):

> After reviewing the facts and circumstances gathered from the inquiry, the Fair Practices Department has concluded that there is probable cause to believe that a violation of the Judiciary's ADA Policy occurred. Specifically, managers in the District Court of Anne Arundel County did not treat your verbal statements on or around February 5 as a request for a reasonable accommodation pursuant to the ADA Policy.

Plaintiff claims that shortly after she received the letter, her "work station was changed from an area that was ADA accommodating to an area that was not ADA accommodating by Ms. Blake at the direction of Tamara Chester." ECF 6, ¶ 3. On March 29, 2016, plaintiff "was placed on emergency medical leave of absence for 33 days . . . and subsequently placed on another FMLA." *Id.* ¶ 4. Plaintiff submitted two exhibits which appear to be doctor's notes seeking plaintiff's excusal from work for several periods in March and April of 2016. *See* ECF 3, "Exhibit F," "Exhibit G." Additionally, plaintiff submitted a document titled "Designation Notice (Family and Medical Leave Act)," which indicates that she was granted FMLA leave for

those same periods. *See* ECF 3, "Exhibit H."

Plaintiff alleges that she "remains seated at a work station that remains ADA non compliant" because her "seat is in front of windows with blinds open with direct sunlight." ECF 6, ¶ 8. Along with her Complaint, plaintiff attached dozens of photographs of the window, each of them labeled with a date between November 2016 and November 2017. *See* ECF 3, "Exhibits K-A-81." Additionally, plaintiff claims that her seat is "near a co worker" who "uses a breathing machine that produces a loud grinding sound that intensives [sic] migraines." ECF 6, ¶ 9. Plaintiff asserts that on various dates, all individually named defendants walked by while plaintiff's co-worker was using the "breathing machine" and made "no mention to [plaintiff] about noise." *Id.* ¶¶ 10-14.

On November 7, 2017, plaintiff filed this suit, alleging violations of Title I of the ADA, for failure to accommodate. ECF 1. Plaintiff asserts that she "has not been reasonably accommodated for 397 days" (ECF 6, ¶ 19), and the "recommendations that were provided by [her] Neurologist would not cause any undue hardship." ECF 6, ¶ 20.

## II. Standard of Review

As noted, the defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6). However, defendants contend that plaintiff's claim is barred by sovereign immunity. The Fourth Circuit recently reiterated that the defense of sovereign immunity is a jurisdictional bar, stating that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).

Therefore, defendants should have brought the Motion under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.

The standards of review for Fed. R. Civ. P. 12(b)(1) and Rule 12(b)(6) are relevant to resolving this Motion.

### A. Rule 12(b)(1)

Defendants raise a defense of sovereign immunity under the Eleventh Amendment to the U.S. Constitution. *See* ECF 9-1. Sovereign immunity is a jurisdictional bar. As noted, it "'deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d at 649 (quoting *Ackerson*, 589 F.3d at 207).

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). "When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

A factual challenge, on the other hand, can also assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Durden*, 736 F.3d at 301. In considering a factual challenge, "the district court is entitled to decide disputed issues of fact

with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits.") (Citation omitted).

Defendants bring a facial challenge to the Court's subject matter jurisdiction, because they contest plaintiff's ability to bring her ADA claim against the Maryland Judiciary. *See* ECF 9-1. Therefore, I shall accept the facts alleged in the Amended Complaint as true.

### B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, ___ U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is

not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.'" Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger,* 510 F.3d 442, 450 (4th Cir. 2007). However, a court may properly consider documents expressly incorporated by reference into the complaint or attached to the

motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency,* 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied,* 543 U.S. 979 (2004). Moreover, the documents attached to a motion to dismiss need not be supported by a declaration of authentication. *Six*, 891 F.3d at 512-13; *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the

contents of that document as true." *Id.*

A court may also consider a document submitted by the movant, even if it was not attached to or expressly incorporated in a complaint. However, the document must be "integral to the complaint" and there can be "no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

As noted, plaintiff has submitted voluminous exhibits, which are not filed on ECF. *See* ECF 3. To the extent that these exhibits are incorporated into the Amended Complaint, I shall consider them.

### III. Discussion

#### A.

Plaintiff brings her claim under Title I of the ADA. *See* ECF 6 at 1. The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2). The ADA contains five titles: Title I, Employment; Title II, Public Services; Title III Public Accommodations; Title IV, Telecommunications; and Title V, Miscellaneous Provisions.

Title I prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Summers v. Altarum Inst., Corp.*, 740 F.3d 325,

328 (4th Cir. 2014) ("The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'") A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Unlawful discrimination under Title I of the ADA "can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting § 12112(b)(5)(A)). Moreover, "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability" may qualify as "discrimination against a qualified individual on the basis of disability." 42 U.S.C. § 12112(b)(5)(B).

**B.**

As a threshold matter, defendants move to dismiss all of plaintiff's claims against the individual defendants: Chester, Donaghy, Blake, Snowden, and Allen. ECF 9-1 at 7. In support, defendants assert that individual supervisors are not employers within the meaning of the ADA, and cannot be individually liable. This is accurate. The ADA does not provide for actions against individual defendants. *See Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) ("[T]he ADA . . . do[es] not provide for causes of action against defendants in their individual capacities."); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (noting that "Title VII does not provide a remedy against individual defendants who do not qualify as 'employers'" and extending that holding to the ADA). Therefore, claims against all five individual defendants shall be dismissed.

**C.**

Defendants seek to dismiss the claim against the Maryland Judiciary on the basis that it is barred by Eleventh Amendment sovereign immunity as to the State of Maryland, its agencies, entities, and/or agents. *See* ECF 9-1.[4] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment "embodies the principle of sovereign immunity and prohibits suit by private parties against states in federal courts." *Weller v. Dep't of Soc. Serv's for City of Balt.*, 901 F.2d 387, 397 (4th Cir. 1990).

The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities . . . ." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002); *see Puerto Rico Aqueduct & Sewer Auth. v. Metcalf &Eddy, Inc.*, 506 U.S. 139, 146 (1993) (quoting *In re Ayers*, 123 U.S. 443, 505 (1887)). Thus, states enjoy immunity from suits brought in federal court by their own citizens, even though the text of the Eleventh Amendment does not explicitly address such a scenario. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Bd. of Tr.'s of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court.").

Under the Eleventh Amendment, an individual is barred from bringing suit against a state in federal court to recover damages, unless an exception to sovereign immunity applies. *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012) ("A foundational premise of the

---

[4] Indeed, defendants appear to have adopted, word for word, language from this Court's prior rulings on the topic. *Compare* ECF 9-1 at 5-6 *with, e.g., Whitaker v. Maryland Transit Admin.*, ELH-17-584, 2018 WL 902169, at *15-16 (D. Md. Feb. 14, 2018).

federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) (quoting *Hans*, 134 U.S. at 15) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'") (internal quotation marks and citation omitted); *Edelman v. Jordan*, 415 U.S. 651, 663, (1974) ("[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.").

And, of import here, Eleventh Amendment sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state," absent waiver or a valid congressional abrogation of sovereign immunity. In *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984), the Supreme Court said: "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *See also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).

I am satisfied that the Maryland Judiciary is an arm or an instrumentality of the State of Maryland. The Constitution of Maryland establishes the power of the Maryland Judiciary, stating, MD. Const. art. IV, § 1:

> The Judicial power of this State is vested in a Court of Appeals, such intermediate courts of appeal as the General Assembly may create by law, Circuit Courts, Orphans' Courts, and a District Court. These Courts shall be Courts of Record, and each shall have a seal to be used in the authentication of all process issuing from it.

Therefore, in the absence of an exception to the Eleventh Amendment bar, it is not subject to suit in federal court.

The Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002).

None of the exceptions is applicable here.

First, "sovereign immunity has not been abrogated for . . . ADA Title I claims." *McCray*, 741 F.3d at 483 (citing *Garrett*, 531 U.S. at 374). In *Garrett*, the Supreme Court held that suits by individuals against a State for money damages under the ADA are barred by the Eleventh Amendment.

To be sure, a state may waive its Eleventh Amendment sovereign immunity and permit suit in federal court. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002); *Lee-Thomas*, 666 F.3d at 249. But, the test to determine whether a State has waived its immunity from suit in federal court is a "stringent" one. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996). Under *Atascadero*, a court may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* (internal quotation marks and alteration omitted); *accord Lee-Thomas*, 666

F.3d at 250-51. However, Maryland has not waived its sovereign immunity. *See McCray*, 741 F.3d at 483. Further, Eleventh Amendment sovereign immunity extends to Maryland's agencies and their agents in their official capacity. *Id.*; *see also Constantine*, 411 F.3d at 479.

Finally, *Ex parte Young*, 209 U.S. 123 (1908), provides an exception to the general law, permitting prospective injunctive relief to correct an ongoing violation if the suit is brought against state officials in their official capacities. To avoid an Eleventh Amendment bar to suit under this doctrine, the complaint must be lodged against a state official and it must "alleg[e] an ongoing violation of federal law and see[k] relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

However, plaintiff seeks monetary damages. *See* ECF 1 at 5-6.[5] Therefore, the *Ex parte Young* exception does not apply. *See Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 549 (4th Cir. 2014).

Plaintiff's Opposition offers no legal argument for why her suit is not barred by the Eleventh Amendment. *See* ECF 17. Rather, plaintiff states that she "sought and received a 'Notice of Right to Sue' letter from the Equal Employment Opportunity Commission on August 8, 2017." ECF 17 at 2. And, plaintiff "respectfully request[s] that [the Court] allow [her] complaint to move forward." *Id.* Attached to the Opposition is a "Dismissal and Notice of Rights" from the EEOC to plaintiff, closing the EEOC's file on plaintiff's charge of discrimination. ECF 17 at 3.

A "Notice of Right to Sue" letter informs a complainant that they may file a suit in federal or state court. *See* 42 U.S.C. § 2000e-5(f)(1); *see also Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (discussing exhaustion requirement). But, the Notice does not

---

[5] Plaintiff does not specify her requested relief in her Amended Complaint (ECF 6), but her initial Complaint seeks "$300,000 COMPENSATORY AND 740,000 PUNITIVE DAMAGES." ECF 1 at 5-6.

automatically entitle a plaintiff to proceed all the way to trial if his or her claims are barred for another reason. *See, e.g.*, *McCray*, 741 F.3d at 483 (finding that an ADA claim was barred by the Eleventh Amendment even when plaintiff had exhausted her administrative remedies).

Therefore, because the State of Maryland has not consented to suits under the ADA, and because no exception to the Eleventh Amendment's general bar to suits against the State applies, plaintiff's ADA claim shall be dismissed, without prejudice.[6]

## IV. Conclusion

For the reasons set forth above, I shall GRANT the Motion. ECF 9. An Order follows, consistent with this Memorandum.

Date: September 12, 2018

/s/
Ellen Lipton Hollander
United States District Judge

---

[6] This ruling is without prejudice to plaintiff's right to pursue her claims under Maryland law, in a Maryland court. I express no opinion on the merits of such an action.